# IN THE COURT OF APPEALS OF IOWA

No. 18-1375
Filed November 21, 2018

**IN THE INTEREST OF L.T., A.T., and D.T.,**
**Minor Children,**

**K.T., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Linn County, Susan Flaherty, Associate Juvenile Judge.

A mother appeals the termination of her parental rights to three children. **AFFIRMED.**

Ellen Ramsey-Kacena, Cedar Rapids, for appellant mother.

Thomas J. Miller, Attorney General, and John McCormally, Assistant Attorney General, for appellee State.

Kimberly A. Opatz of Linn County Advocate, Inc., Cedar Rapids, guardian ad litem for minor children.

Considered by Danilson, C.J., and Potterfield and Doyle, JJ.

**DANILSON, Chief Judge.**

A mother appeals from an order terminating her parental rights to three children: L.T., born in October 2012; A.T., born in April 2014; and D.T., born in May 2015.[1] The mother challenges the cessation of reasonable efforts by the department of human services (DHS) upon the juvenile court's oral statement of termination of parental rights in May 2017. She also asserts the juvenile court erred in denying her July 1, 2018 motion to reopen the record and in failing to give her additional time to seek reunification with her children. Because the mother does not challenge the grounds upon which termination was entered, termination is in the children's statutory best interests, and no permissive factor weighs against termination, we affirm.

The mother was previously involved with DHS and child-in-need-of-assistance (CINA) proceedings on two other occasions involving other children she had. Her parental rights for two of her children were terminated and a third child was placed in his father's sole custody. Throughout all of the juvenile court proceedings, the mother has dealt with long-term substance-abuse and mental-health issues.

In 2014, L.T., A.T., and D.T. came to the attention of DHS following the birth of D.T., who tested positive for amphetamines at birth. The mother acknowledged taking her husband's Adderall medication. At the time, L.T. was age three years and A.T. was approximately fourteen months old.

---

[1] The father's rights were also terminated but he has not appealed.

At a June 2015 hearing, all parties stipulated the children were CINA. A safety plan was put in place and the children remained in the home. However, due to the parents' continued drug use, the children were removed in September 2015. They have remained in the same foster home since their removal.

The mother has experienced numerous traumatic events and her response has been to self-medicate. She has participated in multiple substance-abuse treatment programs over the years, including five residential treatment programs, but has not been successful in maintaining her sobriety. She has a poor work history and a pattern of unstable housing.

At the time of the November 2016 termination trial[2]—fourteen months after the children had been removed from the parents' custody—the mother acknowledged she had used methamphetamine the week before the hearing. Her November 14, 2016 drug patch tested positive for methamphetamine and amphetamines. The mother stated she "absolutely" needed treatment for substance abuse. Her most recent substance-abuse evaluation recommended residential treatment. She testified, "I need to do that [a residential treatment program]. I can't focus on life and everything else if I don't have my sobriety as number one. I need to be away. I need to be in a structured environment. I can't stay sober by myself." She asked the court,

> Give me time to go and focus on my recovery. And not just thirty days, I have no intention of just doing thirty days. And to actually give me a chance because I have shown that I can be in recovery, that I'm dedicated to it, but right now I have continued use and I can't do it alone, and I need time to get in somewhere and to have that support again, because I have been lacking that.

---

[2] The termination trial was originally scheduled for September 26, 2016, but was continued because of a court closure.

At the end of the November 2016 hearing, the juvenile court stated the matter of termination of parental rights was submitted for ruling.

A January 25, 2017 permanency review hearing was held. The mother had been in a residential treatment program, left the program and was "hoping to get back into an inpatient program." At the end of that hearing the court stated:

> Well, obviously, prior orders are going to continue pending ruling on the termination action, which I would like to give you a date that I will have it done by, but I can't. But I certainly hope as parents you would continue to work on the case plan and that for your own benefit we will see some progress toward achieving sobriety. So keep working with the services that are available to you.

In an order dated January 26, 2017, the juvenile court continued prior orders and stated DHS had made reasonable efforts to reunite the family and services included parenting instruction/services; drop-in services; supervised visitation and services; individual counseling; couples counseling; family team meeting; foster family care; parent partner; substance-abuse evaluation; substance-abuse treatment; drug testing; mental-health treatment; medication management; housing referrals; and family safety, risk and permanency services.

On May 17, 2017, the court held another permanency review hearing in which it noted, "The parents continue to struggle with substance abuse. They are currently without housing and living with a relative in elderly housing." The court also indicated "[f]urther hearing on the petition for termination of parental rights is scheduled for May 23, 2017."

A May 23, 2017 transcript shows the State sought to reopen the record to include case progress reports submitted after the November hearing, the

permanency review order, and a guardian ad litem report from January 2017. The State's attorney stated:

> We had hearing on the termination proceeding in November of 2016. Six months has elapsed since that time, we don't have a ruling on this matter, and I believe there is information contained in those reports that the Court should have when making a ruling as to what is in the best interest of these children.

The court allowed the record to be reopened and admitted the State's additional exhibits. The mother was allowed to testify that she had received notice that she had been approved for subsidized housing due to "[h]aving a DHS case and being homeless, or in imminent danger." She also stated she was unemployed but was to start working cleaning apartments for a realty company, she was attending substance-abuse outpatient treatment, and was receiving visits with the children three times per week. She testified she had relapsed on April 25, 2017, but was participating in mental-health treatment. On cross-examination, she admitted also relapsing in February and April and she did not show for a May 16 drug screen.

At the close of the May 23, 2017 hearing, the court stated:

> Okay. Well, the matter is resubmitted for ruling and, you know, I regret that my schedule doesn't really allow me any time during the course of a workday to write rulings, so I have to find time otherwise. But, [Mother], I have fully reviewed your file and I know your family situation here even beyond this particular case with the history that I have had with your family, and I'm disappointed [the father] is not here because I want to relay to you that I'm going to grant the State's petition for termination of parental rights. And I want to tell you that directly. The grounds for it are [Iowa Code section] 232.116[(1)](f), (g), and (h). And, [Mother], you know, termination of parental rights has really little to do with the parents' love for their child, and I have never had any doubt that you and [the father] love your children and you want what is best for them, and that you have done what you can do to get them back to your care. The problem is, neither you or [the father] have really been able to gain control of

your addiction issues, and your substance abuse issues, and, that, combined with mental health issues is the primary reason that your children cannot be safely returned to your care. It's not about your ability to feed them the right food or to pay attention to their needs, it's about your continuous use of substance. And I wish it were different, but it's not. The children have waited long enough that it's in their best interest to have permanency. So I will grant the State's petition and order that they be made available for adoption. And, again, I'm sorry to have to do that for you and for [the father]. I wish we had been able to help you get clean and sober and stay clean and sober, but I can't hold your kids hostage to make that happen; their needs have to be considered separately from yours and [the father's], and their needs require permanency, safety and stability, and I can't say that that is going to happen by return of custody to you or to their father now or anytime in the recently near future without them continuing to be at risk of harm and requiring adjudication. So that order will be entering.

A July 18, 2017 foster care review board (FCRB) report asked the court to issue a termination of parental rights order "so the girls can move towards finalized adoption."

No termination order was forthcoming.

On September 21, 2017, another permanency review hearing was held at which the court stated:

I want to start out by acknowledging that I have created a limbo situation here because I have indicated orally that parental rights are terminated. I know a final visit has occurred, and I have not done the written order, and so I apologize for that. But I think it does impact today's review. So, you know, again I want to acknowledge that I apologize and hopefully we can move forward here and I will get things on file as quickly as I can.

At that hearing, the mother by counsel asked that "reasonable efforts continue until there is a termination order." The court stated it "will do [its] best to get you a written order."

On October 2, 2017, the mother filed a request for reasonable efforts noting she had been provided a final visit with the children in May and received no further services.

On January 12, 2018, the FCRB again asked that the court enter a written termination-of-parental-rights ruling so the children could be adopted.

On July 1, 2018, the mother asked that the record be reopened to allow her to introduce evidence of her progress.

On July 10, 2018—for the third time—the FCRB asked the court "to expedite the finalization of termination of parental rights so the children can achieve permanency."

On July 27, 2018, the juvenile court finally issued a written ruling terminating the mother's parental rights.

On our de novo review, *see In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014), we agree with the juvenile court that clear and convincing evidence existed at the time of the termination trial that the children were of the pertinent statutory age, had been adjudicated CINA, had been out of the parent's custody for the required statutory period, and could not be returned to the mother at the present time— providing a proper basis for termination of parental rights under Iowa Code section 232.116(1)(f) and (h). We also agree with the juvenile court that the children "deserve permanency, safety and security," which the mother could not provide, and no permissible factor under section 232.116(3) weighed against termination.

The mother does not dispute the existence of the grounds for termination. She does, however, challenge the cessation of reasonable efforts by DHS upon the juvenile court's oral statement of termination of parental rights in May 2017.

She also asserts the juvenile court erred in denying her July 1, 2018 motion to reopen the record and in failing to give her additional time to seek reunification with her children. These complaints arise solely due to the juvenile court's unreasonably delayed ruling.

We must express our displeasure with the juvenile court's excuses for failing to provide a timely written order terminating the mother's parental rights. Chapter 232 sets out statutory time periods and time "is a critical element" in termination proceedings. S*ee In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). After the statutory time period for termination has passed, termination is viewed with a sense of urgency. *Id.* Proceedings affecting custody of children are to be given priority with expedited hearing and rulings. *See, e.g.*, Iowa R. App. P. 6.902(1). The termination trial was held and submitted for ruling in November 2016. Here, no final written ruling was entered until July 2018. The juvenile court was not unaware of it having placed these children in an unnecessary limbo. The State drew attention to the lack of a written ruling, and the FCRB—in not one, but *three* review reports—requested that the juvenile court issue its termination-of-parental-rights order so the children could move forward toward a finalized adoption. We acknowledge judicial officials and staff are burdened with heavy caseloads. We are also aware the judiciary is understaffed in many respects. Notwithstanding, a long delay in issuing a ruling in a termination action can be agonizing for the children, the parent or parents, as well as any prospective adoptive parents. Here, the juvenile court delayed the children's permanency without explanation.

We will not prolong any further the children's family insecurity. If the record had been reopened in July 2018 as requested by the mother, this termination

action may have continued on for many more months. It was well beyond a reasonable time to consider additional evidence. We also conclude the DHS reasonably ceased providing services after the court's oral rendition of its ruling. A reasonable person would have expected the written ruling to be issued shortly thereafter. Finally, we would discourage rendering an oral ruling from the bench if the written ruling cannot be promptly issued. Any delay in promptly issuing a judicial decision incentivizes parties to seek to reopen the evidence and appeal. Most importantly, delay may serve to deny justice.

We affirm the termination of the mother's parental rights under the required three-step analysis. *See In re D.W.*, 791 N.W.2d 703, 706-07 (Iowa 2010).

**AFFIRMED.**